IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEANNA BAILEY MACK, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| MICHAEL J. ASTRUE, | : | NO. 09-2028 |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE                              DATE: JANUARY 22, 2010

Plaintiff Deanna Bailey Mack ("plaintiff") brought this action pursuant to 42 U.S.C. sections 405 (g) and 1383 (c)(3), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("defendant") denying plaintiff's claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 401, 1381.

As more fully set forth herein, I respectfully recommend that plaintiff's motion for summary judgment and request for review be GRANTED and that this matter be REMANDED for proceedings consistent with this Report and Recommendation.

I.   **PROCEDURAL HISTORY**

Plaintiff first applied for Supplemental Social Security Income ("SSI") and Disability Insurance Benefits ("DIB") on January 29, 2007 (R. at 98-106). Plaintiff claims disability due to spinal stenosis, depression and anxiety (R. at 132), with a disability onset date of December 2,

2004. (R. at 98, 102). Her application initially was denied on June 5, 2007 (R. at 57-65). Plaintiff requested a hearing before the Administrative Law Judge ("ALJ") on July 6, 2007 (R. at 66). After a hearing, the ALJ denied plaintiff's claim. (R. at 15-29). Plaintiff filed a timely request for review with the Appeals Council. The Appeals Council denied Plaintiff's request for review on March 17, 2009. (R. at 1-3). Plaintiff filed the instant action on May 11, 2009.

## II. LEGAL STANDARD

### A. Disability Determination.

The Social Security Act authorizes several classes of disability benefits, including SSI and DIB. To establish a disability under the Social Security Act, a claimant must show that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001)(*quoting Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)); 42 U.S.C. § 423(d). A claimant can establish a disability in either of two ways: (1) by producing medical evidence that one is disabled *per se* as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1, or (2) by demonstrating an impairment of such severity as to be unable to engage in any kind of substantial gainful work which exists in the national economy. *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations provide a five-step sequential evaluation process for determining whether a claimant is under a disability. 20 C.F.R. §§ 404.1520, 416.920. The first step of the inquiry is to determine whether the claimant is performing substantial gainful employment, and if she is, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not performing substantial gainful work, the second step is to determine whether her impairments are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant is found to have a severe impairment, the third step is to determine if the impairment has lasted or is expected to last for a continuous duration of at least 12 months, and whether the claimant's impairments meet or medically equal a listed impairment contained in 20 C.F.R. Part 404 Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is presumed disabled without further inquiry. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant fails to meet or medically equal a listing, step four dictates that the ALJ evaluate the claimant's past relevant work and her residual functioning capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled. If the claimant's impairment prevents him from performing past relevant work, step five is to determine if other work exists in significant numbers in the national economy that accommodates claimant's RFC and vocational factors. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If other work exists, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(iv).

B.   **Judicial Review of Disability Decisions**

The role of this Court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Fargnoli*, 247 F.3d at 38; *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir. 2000). Thus, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. *Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Morales v. Apfel*, 225 F.3d 310,

316 (3d Cir. 2000). Substantial evidence consists of more than a mere scintilla of evidence, but is less than a preponderance of the evidence. *Id*.

The Third Circuit has instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. *Id*.; *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

It is not the role of the Court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ. *See e.g., Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). If the ALJ's conclusion is supported by substantial evidence, this Court may not set aside the Commissioner's decision, even if it would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). This presumption applies both to findings of fact and to inferences reasonably drawn from that evidence. *See Fargnoli*, 247 F.3d at 38 ("[w]here the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently").

### III. ADMINISTRATIVE LAW JUDGE'S DECISION

Plaintiff was 31 years old at the time of the ALJ's decision, making her a "younger individual," with age presenting little or no barrier to her adjustment to alternative employment under the regulations (20 C.F.R. §§ 404.1563, 416.963(c)). (R. at 56).

4

At the first step of the sequential analysis, the ALJ found that the plaintiff has not engaged in substantial gainful activity since her alleged onset date of December 2, 2004. The ALJ also found that plaintiff met the insured status requirements through June 6, 2006. (R. at 20). At step two of the analysis, the ALJ found that plaintiff's "severe" impairments consist of a low back disorder, major depressive disorder, dysthmia disorder, general anxiety disorder, social phobia, and obesity. (R. at 20).

At step three of the analysis, and after review and discussion of the record, the ALJ concluded that plaintiff's impairments did not meet or equal a listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, particularly Listing 1.04: Disorders of the Spine, Listing 12.04: Affective Disorders, or Listing 12.06: Anxiety Related Disorders. (R. at 21-22). The ALJ specifically considered the impact of plaintiff's obesity on her co-existing impairments, as well as her ability to sustain activity on a regular and continuing basis. (R. at 21-22). The ALJ concluded that plaintiff's obesity directly affects her back pain and is a symptom of her mental problems. (R. at 22).

The ALJ found that plaintiff maintains an RFC to perform light exertional work, with further limitations, that she can only stand or walk up to 3 hours out of an 8 hour workday and sit for 6 hours; she cannot perform pushing or pulling with her lower extremities; she needs to walk with a cane for support; she cannot climb ladders, ropes or scaffolds; she cannot balance, kneel crouch or crawl; she can climb stairs and bend only occasionally ; she must avoid all exposure to hazards such as moving machinery and unprotected heights; she can only perform simple, routine tasks secondary to a moderate limitation in concentration, persistence and pace; she cannot have more than occasional contact with supervisors and fellow employees, and she can have no contact with the public. (R. at 22). In making this RFC determination, the ALJ

considered plaintiff's medical records, including those from the John F. Kennedy Mental Health Center ("JFK"); an April 21, 2005 MRI; blood test results; emergency room records from St. Joseph's hospital; evaluations and records from Dr. Scott Stevens, plaintiff's treating psychiatrist; plaintiff's testimony; and the opinions of several state agency consultants. (R. at 23-27).

The vocational expert (VE) testified at the hearing that plaintiff's past work as an electronics technician was skilled, medium exertional work, but heavy exertional work as she actually performed it. (R. at 27, 46). The VE further testified that a claimant with plaintiff's RFC as stated above, could only perform a limited range of light work. (R. at 46-47). Accordingly, the ALJ found that plaintiff is unable to perform her past relevant work. (R. at 27).

The ALJ posed a hypothetical to the vocational expert, asking whether there was other work in the national economy for an individual of claimant's age, education, work experience, and RFC. (R. at 46-47). The VE found d that this person could perform light work as an office helper or information clerk, and sedentary work as a rating clerk and addressing clerk. (R. at 47-48).

The ALJ thus concluded that plaintiff was not under a disability from December 2, 2004 through the date of the decision and could successfully adjust to other work in the national economy. (R. at 20).

## IV.    PLAINTIFF'S REQUEST FOR REVIEW

Plaintiff assigns numerous errors to the ALJ's decision. Plaintiff contends that the ALJ's decision is not supported by substantial evidence because: (1) plaintiff is prejudiced by the ALJ's failure to enforce his subpoena; (2) the ALJ failed to evaluate all six severe impairments

in combination at step 3;  (3) defendant has not met his burden at step five to rebut plaintiff's prima facie case of disability; (4) the ALJ improperly rejected the opinion of the treating psychotherapist (Liza Linder) and treating psychiatrist (Dr. Scott Stevens); (5) the VE's testimony does not qualify as substantial evidence because the ALJ used and improper RFC, posed an erroneous hypothetical to the VE.[1]

V. **DISCUSSION:  The ALJ's Failure to Enforce His Subpoena was Improper and Warrants Remand.**

 "When it is reasonably necessary for the full presentation of a case, an administrative law judge ... may, on his or her own initiative or at the request of a party, issue subpoenas ... for the production of ... records ... that are material to an issue at the hearing."  20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1).  This language gives broad discretion to the ALJ to decide whether or not to issue the subpoena.

Where a subpoena request is made by the claimant, the ALJ must determine if the information sought is reasonably necessary for the full presentation of the case.  *See* Social Security Administration (SSA) Hearings, Appeals, and Litigation Law Manual (HALLEX), Chapter I-2-5-78 (c)(3) Evaluating Subpoena Requests.  If the ALJ determines this to be the case, the ALJ should issue a subpoena in response to the claimant's request.  HALLEX, Chapter I-2-5-78 (c)(3) Evaluating Subpoena Requests.  If a subpoena has been met with non-compliance, SSA has promulgated procedures to enforce such subpoenas.  *See* HALLEX,

---

[1] In light of the recommendation to remand the matter in order that the subpoena may be enforced, the Court will not address these other assignments of error, as the missing records may alter the ALJ's decision with regard to the consideration of impairments in combination, the ALJ's step five analysis, the assessment of the opinions of plaintiff's treating sources, and may also require the supplemental testimony of a VE.

7

Chapter I-2-5-82 Noncompliance with a Subpoena.[2]

Additionally, 42 U.S.C.A. § 405(e) provides:

(e) Judicial enforcement of subpoenas; contempt

> In case of contumacy by, or refusal to obey a subpoena duly served upon, any person, any district court of the United States for the judicial district in which said person charged with contumacy or refusal to obey is found or resides or transacts business, upon application by the Commissioner of Social Security, shall have jurisdiction to issue an order requiring such person to appear and give testimony, or to appear and produce evidence, or both; any failure to obey such order of the court may be punished by said court as contempt thereof.

The Third Circuit has recognized the broad discretion conferred upon the ALJ to decide whether or not to issue a subpoena (*see eg. Torres v. Barnhart*, 139 F. App'x 411, 414 (3d Cir. 2005)( "[t]he ALJ correctly determined that a subpoena was not necessary for full presentation of Claimant's case, and accordingly did not abuse her discretion in not granting Claimant's request to subpoena [the treating physician] to complete an assessment form")). However, the Third Circuit has not addressed the discretion afforded to an ALJ who must decide whether to enforce the subpoena initially found to be necessary for a full and fair development of the record, after noncompliance.

---

[2] This section of the manual states,

> If an individual refuses or fails to comply with a subpoena, the ALJ must consider any changes in the situation since the subpoena was first issued and again determine whether the evidence or facts requested are reasonably necessary for the full presentation of the case. If so, the ALJ will prepare a memorandum to the OGC Regional Chief Counsel requesting enforcement of the subpoena ... and transmit the memorandum to the OGC Regional Chief Counsel through the HOCALJ who shall forward it to the RCALJ...

8

In the instant matter, plaintiff requested that the ALJ subpoena psychotherapy treatment records from the Mazzoni Center on the grounds that the psychiatrist's (Dr. Stevens) notes had been provided, but the psychotherapist's records had not been provided because the Mazzoni Center considered these records "too voluminous." (R. at 9-10). Plaintiff's counsel argued that these notes were necessary for a full and fair development of the record. The ALJ, apparently agreed, and issued a subpoena for all of plaintiff's psychotherapy treatment records from the Mazzoni Center, from December 2004 forward (R. at 83). The Mazzoni Center failed to comply with the subpoena. The ALJ mentions in his decision that this subpoena was issued, but fails to address why the records were no longer needed (if this was indeed the case).

Plaintiff has treated at the Mazzoni Center since at least June 2006. (R. at 153). The ALJ reviewed the assessment by Dr. Stevens dated July 30, 2007 (R. at 275-83), as well as the sparse Mazzoni Center notes in the record dated June 2006 through November 2007 (R. at 284-314). The record also contains a letter from Dr. Stevens, faxed to plaintiff's counsel on March 3, 2008, stating that plaintiff continues to attend weekly therapy sessions with Ms. Linder of the Mazzoni Center and receives psychiatric treatment from Dr. Stevens. (R. at 283). This letter also states that plaintiff's depressive symptoms continue to "wax and wane." (R. at 283).

The ALJ discounted the assessment of Dr. Stevens, stating that Dr. Stevens' own notes did not support his opinion. (R. at 25). Specifically, the ALJ cites to four specific notations from Dr. Stevens from June 5, 2006 to July 17, 2006, stating that these four notations do not support Dr. Stevens' opinion that plaintiff has extreme limitation in dealing with work stress and maintaining attention and concentration, as well as marked and moderate limitations in a variety of other areas. (R. at 25-26).

The ALJ does not address the incomplete records from the Mazzoni Center (R. at 284-314), other than to note that they indicate that school "continues to go well."[3] (R. at 26). The "voluminous" notes detailing plaintiff's frequent treatment at the Mazzoni Center may lend support to (or even discredit) Dr. Stevens' opinion, but the ALJ never received or considered these notes.

The ALJ also discounts Dr. Stevens' opinion based upon the opinion of Dr. Dana Goode, a consultative psychological examiner, even though the ALJ acknowledged that Dr. Goode's report was incomplete.[4] (R. at 24). Nevertheless, the ALJ found the portions of the report in the record to be persuasive, in that Dr. Goode found plaintiff to have only moderate limitations in her ability to carry out detailed instructions; make judgments on simple work-related decisions; interact appropriately with co-workers, supervisors, and the general public; respond appropriately to changes in the work setting; and respond appropriately to work pressures in a usual work setting. (R. at 24).

It is not clear from Dr. Goode's incomplete report which records Dr. Goode reviewed in conjunction with her examination of plaintiff, nor is it clear which records Dr. Goode reviewed in compiling her report. A review of the additional records from the Mazzoni Center might

---

[3] Additionally, this note does not support the ALJ's decision to discount Dr. Stevens' opinion because the ALJ fails to mention that plaintiff's school attendance and course completion history were sporadic at best. Plaintiff testified that she "kept trying to go to school and messing it up." (R. at 37). Additionally, plaintiff attempted to, but did not obtain any credits at Drexel University (R. at 38), attempted to take 12 credits at Penn State, but only obtained 3 credits (R. at 44), and did not complete her program at Lincoln Tech (R. at 44).

[4] Dr. Goode's assessment is missing several pages (particularly pages 4-6 based on the fax transmittal numbering), which contain much of the narrative to support her conclusions. *See* R. at 217-20. The pages in the record contain only an introduction and brief history, and the last two pages of her checklist assessment.

impact Dr. Goode's report and conclusions. Upon remand, Dr. Goode should also be given an opportunity to review these records and provide a *complete* report for the ALJ's review.

The ALJ also relies upon the opinion of the state agency, non-examining, psychological consultant, Dr. Joseph Barrett. Dr. Barrett reviewed the records available as of May 29, 2007, including the report of Dr. Goode, and found that plaintiff had only moderate limitations in her ability to carry out detailed instructions; work in coordination with or proximity to others without being distracted by them; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. (R. at 25, 239-40). The state agency psychologist further opined that plaintiff was moderately limited in concentration, persistence and pace and had 1-2 episodes of deterioration or decompensation in work settings. (R. at 252). The state agency consultant's review did not include the voluminous records from the Mazzoni Center. A review of these records may modify the state agency consultant's opinion.

Remand may not always be necessary where an ALJ fails to enforce a subpoena, but it appears in this case to be appropriate. Many of the reasons the ALJ gave for rejecting the opinion of Dr. Stevens, *may* be debunked upon examination of the rest of the records concerning plaintiff's mental health treatment. Furthermore, the opinions of the state agency consultants that the ALJ relies upon in making his decision, could very well change upon review of these voluminous records.

The undersigned expresses no opinion as to the persuasiveness of any additional records from the Mazzoni Center. However, at least at one point, the ALJ found the records to be relevant to and necessary for a full and fair development of the record. The ALJ does not give any reasoning for no longer requiring them.

11

I therefore respectfully recommend that this matter be remanded so that the ALJ may enforce the subpoena and conduct a further review and proceedings as found to be appropriate.

In sum, I make the following:

# RECOMMENDATION

AND NOW, this ___22ND___ day of January, 2010, it is RESPECTFULLY RECOMMENDED that plaintiff's plaintiff's Motion for Summary Judgment and request for review be GRANTED and this matter be remanded for enforcement of the subpoena originally issued by the Commissioner and any other proceedings deemed appropriate after review of these records.

**BY THE COURT:**

 /s/ Lynne A. Sitarski
**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**